SCHARLES et al. v. N. HUBBARD, JR., & CO.

(Supreme Court, Appellate Term. November 10, 1911.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—PRESUMPTIONS—CONSTRUCTION OF EVIDENCE.

On appeal from a judgment dismissing the complaint, plaintiff is entitled to the most favorable inferences deducible from the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3748, 4024; Dec. Dig. § 927.*]

2. INSURANCE (§ 103*)—BROKERS—DUTY TO PRINCIPAL.

An insurance broker, while not an insurer of the financial condition of a company from which he obtains policies, must use reasonable care, skill, and judgment, with a view to the security or indemnity for which insurance is sought.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 130; Dec. Dig. § 103.*]

3. INSURANCE (§ 288*)—WARRANTIES—RIDER—OTHER INSURANCE—EFFECT.

Valid provision in a fire policy rider, that the policy is issued on a warranty by assured that other insurance is in force on the same property in the same proportions and at no higher rate of premiums, constitutes a warranty, falsity of which renders the policy void.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 660–669; Dec. Dig. § 288.*]

4. INSURANCE (§ 150*)—CONTRACTS—RIDERS—EFFECT.

A rider attached to the face of a fire policy is part of the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 305–307; Dec. Dig. § 150.*]

5. INSURANCE (§ 134*)—CONTRACTS—RIDERS—VALIDITY.

Under Insurance Law (Consol. Laws 1909, c. 28) § 121, permitting addition to a standard form policy of provisions necessary to clearly express the conditions of insurance, etc., a fire policy rider, reciting that the policy is issued upon warranty by assured that another company has insurance covering the same property in the same proportions and at no higher rate of premium, is valid.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 214–217; Dec. Dig. § 134.*]

6. INSURANCE (§ 288*)—WARRANTIES—BREACH.

A fire policy is rendered unenforceable by falsity of warranties by assured in a rider attached to the policy that another company carries insurance on the same property in the same proportion and at no higher rate of premium.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 660–669; Dec. Dig. § 288.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs, 1907 to date, & Rep'r Indexes

7. INSURANCE (§ 111*)—BROKERS—LIABILITY TO PRINCIPAL—CONDITIONS PRE-
CEDENT TO ACTION.

    To · recover against fire insurance brokers for damages sustained
through their effecting invalid insurance, preventing the principal from
recovering on a loss under the policy, he need not show that he has sued
the insurance company; it being sufficient to show that the policy was
void, and that the company refused to pay after receipt of due proofs
of loss.

    [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 111.*]

    Bijur, J., dissenting.

Appeal from City Court of New York.

Action by Henrietta F. Scharles and another, partners as Scharles
& Deutsch, against N. Hubbard, Jr., & Co. Judgment dismissing the
complaint, and plaintiffs appeal. Reversed, and new trial ordered.

Argued before SEABURY, LEHMAN, and BIJUR, JJ.

Prince & Nathan, for appellants.

Charles P. Northrop (Robert J. Fox, of counsel), for respondent.

SEABURY, J. [1] The complaint having been dismissed at the
close of the plaintiffs' case, it follows that upon this appeal that the
plaintiffs are entitled to the benefit of the most favorable inferences
which are deducible from the evidence.

[2] The defendant is a domestic corporation engaged in the busi-
ness of an insurance broker. The present action is predicated upon
the claim that the defendant negligently procured for the plaintiffs a
policy of fire insurance which was void, and that by reason of this
fact the plaintiffs are unable to recover upon it, although they have
suffered the loss against which the policy was designed to insure them.
The duty which the defendant as an insurance broker owed the plain-
tiffs under their contract is well defined in the case of Burges v. Jack-
son, 18 App. Div. 296, 298, 46 N. Y. Supp. 326, affirmed 162 N. Y.
632, 57 N. E. 1105. In that case Bradley, J., said:

    "The defendants, by holding themselves out as persons constituting such
firm, engaged in the business of effecting insurance, assumed to have the req-
uisite knowledge, information, ability, and skill to accomplish such pur-
pose in behalf of those who should become their patrons. They were not in-
surers of the adequacy in financial conditions of the companies from which
policies were obtained through their advice and agency; but, in whatever
they did in that respect for others, they undertook to use reasonable care,
skill, and judgment, with a view to the security or indemnity for which in-
surance was sought."

Pursuant to the plaintiffs' request, the defendant furnished them
with several policies of fire insurance. We are concerned upon this
appeal with but two, viz.: The policy issued by the National Fire
Insurance Company and that issued by the Standard Fire Insurance
Company.

[3] The policy in the National Company was procured March 15,
1907, and ran for one year from that time, and covered the plaintiffs'
property in the sum of $2,000 on merchandise alone. The premium
rate prescribed by it was 1.815. The policy in the Standard Com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pany was procured some months later, and by its terms ran for one year from its date, and purported to cover the plaintiffs' property in the sum of $750 on merchandise and $250 on fixtures. The premium rate prescribed in it was 1.731. The policy in the Standard Company had attached to it a rider which in part provided as follows:

"This policy is issued upon the understanding and warranty by the assured that the National Insurance Company of Hartford has now a policy or policies in force insuring the identical property described in this policy for the sum of $2,000 in form concurrent herewith, in identically the same proportions on each part thereof, and at no higher rate of premium, and that said policy or policies as now written will be continued in force during the entire currency of this policy: otherwise, this policy is void."

A comparison of the terms of the policy issued by the National Company and those of the Standard Company shows that the policy of the National Company was at a different and higher rate of premium than the rate prescribed in the policy of the Standard Company. Nor were the proportions of the two policies or the property covered by them identical. If the clause quoted above as contained in the rider attached to the policy was valid, there can be no doubt that it constituted a warranty, and that the falsity of the statements therein contained rendered the policy void. No question seems to be raised as to the duty of the defendant to procure valid policies of insurance for the plaintiffs, nor is any claim made that the plaintiffs were in any way responsible for the policies which were actually procured.

[4] To avoid the consequences inevitable from the conclusion that the clause referred to constituted a warranty, the respondent attempts to separate the clause contained in the rider from the policy itself, and argues that the clause contained in the rider, not being within the terms of the standard form prescribed by law, is invalid, under section 121 of the insurance law. The rider is a part of the contract, and must be considered as such in this action against the insurance brokers. It is now well settled that a rider attached to the face of the policy is a part of the contract. Hardy v. Insurance Company, 166 Mass. 210, 44 N. E. 209, 33 L. R. A. 241, 55 Am. St. Rep. 395; Quinn v. Fire Association, 180 Mass. 560, 62 N. E. 980; Benedict v. Ocean Insurance Company, 31 N. Y. 389. This being so, it is evident that the defendant is confronted by the horns of a dilemma. If the rider itself does not render the contract illegal, on the ground that it is contrary to the standard form, then the falsity of the warranty therein contained avoids the policy. If the rider does render the contract illegal, then the defendant is liable for having procured for the plaintiffs a void policy. Either view is fatal to the contention of the defendant.

[5] The contract between the Standard Company and the plaintiffs was clearly made in New York. It was therefore requisite that the policy should be in the standard form prescribed by law. Section 121 of the insurance law prescribes that the standard form of policy shall be used, and specifies in the exceptions therein contained the nature of the clauses which may be added without being deemed a departure from the statutory form. Section 121 of the insurance law itself spec-

ifies certain exceptions to the general rule therein declared. It is only necessary for the purpose of this case to consider the second exception specified in that section. The second exception includes:

"Printed or written forms of description and specifications or schedules of the property covered by any particular policy, and any other matter necessary to clearly express all the facts and conditions of insurance on any particular risk not inconsistent with or a waiver of any of the conditions or provisions of the standard policy herein provided for."

The rider attached to the policy of the Standard Company related to obtaining other insurance from other companies outside of this state, and that this purpose may be accomplished consistently with section 121 of the insurance law, which prescribes the use of the standard form of policy, appears from section 137 of the insurance law, which distinctly recognizes such insurance as valid upon compliance with the conditions therein prescribed.

Upon the trial the plaintiffs endeavored to show that the defendant had complied with the conditions prescribed by section 137 of the insurance law. This evidence the learned court below incorrectly excluded, although without this evidence it could not have been shown that the defendant procured the policy in the manner prescribed by law. The rider attached to the policy was within the second exception contained in section 121 of the insurance law, and did not serve to make the policy contrary to the standard form prescribed by law. The provision contained in the rider relates to the facts and conditions of the particular risk insured against, and was not inconsistent with or a waiver of any of the conditions or provisions of the standard policy prescribed by law.

[6] Treating the policy in question as a contract made in this state, it is evident that the rider attached to it was a part of the contract, and that the policy as a whole was not contrary to the standard form prescribed by law. The rider, which was a part of the contract, contained certain warranties, which were false in fact, as alleged in the complaint, and the policy itself was void on this account.

[7] The plaintiffs were not obliged to show that they had brought an action against the Standard Company. It was sufficient, to establish a prima facie case, to show that the policy was void, and that the insurance company had refused to pay the amount specified in the policy after receipt of due proofs of loss. Landusky v. Beirne, 80 App. Div. 272, 80 N. Y. Supp. 238, affirmed 178 N. Y. 551, 70 N. E. 1101. It follows that the learned court below erred in dismissing the complaint.

Judgment reversed, and new trial ordered, with costs to the appellants to abide the event.

LEHMAN, J. I concur, on the ground that the rider is part of the contract, and that the contract cannot be enforced without the rider.

BIJUR, J. (dissenting). Plaintiffs, holders of two policies of fire insurance, sue defendant, which is an insurance broker, alleging that the latter obtained one of these policies in a form which rendered it

void, and that defendant is liable to plaintiffs for its negligence to the amount of the loss subsequently suffered by plaintiffs through a fire on property covered by the terms of the policy, but the amount of which the insurance company declined to pay by reason of this alleged invalidity of the policy.

Plaintiffs, having been unable to obtain sufficient insurance in companies authorized to do business in this state, applied to defendant for what is known as "affidavit or surplus insurance," as provided for in section 137 of the insurance law. Thereupon defendant first obtained a policy in a Connecticut insurance company for $2,000 on merchandise alone at a premium rate of 1.815. Seven months later it obtained a policy in an Iowa company for $1,000, $750 on merchandise and $250 on fixtures, at a premium rate of 1.731. The later policy was in the standard form, but attached thereto was a rider reading as follows:

"This policy is issued upon the understanding and warranty by the assured that National Insurance Company of Hartford has now a policy or policies in force insuring the identical property described in this policy for the sum of $2,000 in form concurrent herewith, in identically the same proportions on each part thereof, and at no higher rate of premium, and that said policy or policies as now written will be continued in force during the entire currency of this policy; otherwise, this policy is void."

The statements in this paper are manifestly untrue, and plaintiffs claim that it rendered the policy void and that the invalidity was caused by defendant's negligence. Plaintiffs did not examine their policies after receiving them. After bringing the suit against this defendant, the plaintiffs brought an action against the Iowa company, in which, of course, they maintained that the policy was valid. The learned trial court dismissed the complaint, and from the colloquy between court and counsel, as it appears in the record, it is not perfectly clear whether the court considered the action in bringing the Iowa suit as a sort of election to treat the policy as valid, thus defeating any recovery in the case at bar, or whether the court considered the policy valid for other reasons.

The doctrine of election is not applicable to a case like the one at bar, and that seems to be conceded by counsel for both sides. In any event, the election, if any were possible, would have been manifested by the bringing of the New York suit first, thus having the effect of treating the policy as invalid. It is unnecessary to pursue that branch of the case further, however, because I regard the policy as valid for reasons affecting its substance.

Section 121 of the insurance law, after prescribing the standard form of fire insurance policies, provides as follows:

"No fire insurance corporation, its officers or agents, shall make, issue, or deliver for use, any fire insurance policy or the renewal of any such policy on property in this state, other than such as shall conform in all particulars as to blanks, size of type, context, provisions, agreements and conditions with such printed blank form of contract or policy; and no other or different provision, agreement, condition or clause shall be in any manner made a part of such contract or policy or indorsed thereon or delivered therewith, except as follows, to wit: First. * * * Second. Printed or written forms of description and specification, or schedules of the property covered by any particular policy, and any other matter necessary to clearly express all the.

facts and conditions of insurance on any particular risk not inconsistent with or a waiver of any of the conditions or provisions of the standard policy herein provided for."

There is nothing in section 137 to exempt policies issued thereunder from the inhibition contained in section 121. It becomes necessary, therefore, to consider the validity of the rider and its effect on the entire policy. The purpose of the Legislature in enacting this legislation has been well stated by the Court of Appeals in Quinlan v. Providence-Washington Ins. Co., 133 N. Y. 356, 365, 31 N. E. 31, 33 (28 Am. St. Rep. 645):

"The practice which prevailed before this enactment, whereby each company prescribed the form of its contract, led to great diversity in the provisions and conditions of insurance policies, and frequently to great abuse. Parties taking insurance were often misled by unusual clauses or obscure phrases concealed in a mass of verbiage, and often so printed as almost to elude discovery. Unconscionable defenses based upon such conditions were not infrequent, and courts seem sometimes to have been embarrassed in the attempt to reconcile the claims of justice with the law of contracts. Under the law of 1886 companies are not permitted to insert conditions in policies at their will."

In other words, the purpose of this legislation is to establish a standard form of policy, and to forbid the insertion therein or the addition thereto by rider or otherwise of any provisions inconsistent with the general terms of the standard form, unless such provisions be authorized either by such legislation or by the terms themselves of the standard form. While I can find no case in this state which holds that the terms of the standard policy may not be varied by the express consent of both parties thereto, a somewhat analogous question, so far as applicable to the case at bar, has been decided in the Supreme Court of Michigan. Attorney General v. Commissioner of Insurance, 148 Mich. 566, 573, 112 N. W. 132. The view of the court in that case may be summarized in the statement that legislative authority to modify the standard form does not go to the extent of permitting the standard form to be used as a mere framework to hold an entirely new contract between the insurer and the insured; that the right of the company to enforce a modification of the standard form in any respect must be found in the provisions of that form permitting a modification in that very respect; and, finally, that the limitation thus imposed upon the individual's freedom of contract is constitutional. Following out the same general line of reasoning, I believe that the phrase in the standard policy:

"This policy is made and accepted subject to the foregoing stipulation and conditions, *together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto*"

—may not be interpreted as permitting (as is said by the Supreme Court of Michigan) the standard form to be used as a mere frame upon which to affix riders embodying the contract of the parties. It is true that there are to be found in the case of Nelson v. Traders' Insurance Co., 181 N. Y. 472, 74 N. E. 421, expressions indicating that it is competent for the assured and the insurer, by mutual agreement, to modify entirely the provisions of the standard form of policy. But

it is quite evident that that particular question was not presented to the court on the decision of that case, because the sole question which arose was regarding a condition quoted at page 474 of 181 N. Y., and page 421 of 74 N. E., in the opinion:

"If the building or any part thereof falls except as the result of fire, the insurance by this policy on such building or its contents shall immediately cease."

*That clause, however, is part of the standard form,* lines 36 and 37. General expressions in an opinion must always, as pointed out by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257, be read in the light of and in connection with the issue directly involved. In the case cited, it is quite apparent that the court was not directing its thought toward the question of whether the standard form might be modified by additional stipulations, but was interpreting the clause quoted out of the standard form. The language of the court supposed to indicate that the standard form may be freely modified by the consent of the parties palpably refers, at page 475 of 181 N. Y., and page 421 of 74 N. E., to a waiver by the company of provisions in its favor, and on page 476 of 181 N. Y., and page 422 of 74 N. E., to the exception in the second subdivision of section 121, of which the court says:

"The *Legislature left* the parties free in that respect."

There are, on the other hand, repeated expressions confirming the view which I have taken in the case of Hicks v. British American Assurance Co., 162 N. Y. 284, 289, 291, 294, 56 N. E. 743, 744 (48 L. R. A. 424):

"Neither party to it had the right to add to or take from the requirement of the Legislature in that regard. * * * The Legislature of the state of New York has prescribed the standard form of policy for the protection of both insurer and the insured. * * * The Legislature provided for the uniform policy of fire insurance to be known as the standard form insurance policy of the state of New York. Upon the passage of this important legislation, the policy of insurance was no longer of special moment, except as evidence that the contract to insure had been made; for it was no longer competent for the parties to incorporate into the policy any provisions whatever outside of those embraced within the terms of the standard policy. * * * *"

The first question, therefore, is whether this rider may be regarded as within the second exception in section 121 of the insurance law. It seems to me that, bearing in mind the general spirit and purpose of this legislation, that section was not intended to permit to be written into the policy anything other than a description of the property and such provisions as had particular application to the particular risk; and even then it is provided that they must not be inconsistent with the conditions or provisions of the standard policy. From that point of view, however, I cannot but conclude that a rider, such as the one at bar, which puts the insured in the position of warranting that he carries a certain amount of insurance in another company on the identical property, in identically the same proportions on each part thereof, and at no higher rate of premium, has no relation to the safety or

danger of the particular risk insured, is not a description of the property, and, finally, is inconsistent with the conditions of the standard policy, as adding an entirely new cause of forfeiture.

Nor, as I see it, can this rider be justified under that provision of the standard form (lines 11–13) which provides:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy."

Manifestly that provision of the policy is intended to afford to the insurer the same protection against the moral hazard as an adequate description of the particular property, its location, etc., affords it against physical hazard. It is intended to enable the insurer to know and limit the amount of insurance which the insured is carrying, and thus to be governed accordingly in its judgment of the temptation which heavy insurance involves, either toward arson, or, at least, toward undue carelessness in caring for the property insured.

It will be observed, however, that the rider in question contains stipulations directly the converse of those called for by this provision of the standard form. It does not secure the consent of the insurer to additional insurance procured or to be procured by the insured, but, on the contrary, warrants on behalf of the insured that he has other insurance, naming the amount, and that it is in the same proportion on the several kinds of property and at the same rate. It is palpably imposed by the insurer as a convenient means of enabling it to save the trouble and expense of properly conducting its business by adequate inspection and examination of the risk insured, and puts the assured in the position of facilitating the insurer's business, saving it expense and trouble at the sole risk of the injured and at the intended cost of the assured to the extent of forfeiture.

Final resort may be had to the provision of the standard form (lines 7 and 8):

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof."

It may be that the rider in the case at bar should be regarded as at least a misrepresentation under this clause of the policy; but in that view it is vital to note that this clause does no more than recite the common law on the subject. Evans v. Columbia Fire Ins. Co., 40 Misc· Rep. 316, 81 N. Y. Supp. 933. It does not permit a forfeiture by reason of any misrepresentation, thus making it what is technically known in insurance law as a "warranty," but limits avoidance of the policy to those cases in which the misrepresentation is of *a material* fact or circumstance concerning this insurance or the subject thereof. It is quite evident that the misrepresentation contained in the rider under discussion is not of a fact material either to the physical or moral hazard of the risk insured. If an insurance company prefers to omit adequate investigation of the risks which it takes, and to rely solely upon statements of the insured as to other insurance which he carries, and then undertakes to write insurance based solely on the precedent

of other companies, it cannot expect to be allowed to avoid its obligations merely because the assured has made a misstatement of his other insurance, unless it can show that such misstatement materially affected the risk. Indeed, apart from these general considerations, it is evident that in the case at bar the misstatement of the other insurance carried may well have been insignificant, unimportant, and entirely negligible as a practical consideration.

I hold this rider to be unauthorized and "inconsistent with the *conditions* or provisions of the standard policy," because it imposes forfeiture for a cause not mentioned in the standard policy, and not contemplated in either its letter or its spirit. Indeed, if the rider is to be treated as embodying a representation, the provision therein contained, constituting it a warranty, is inconsistent with the clause of the standard policy which renders the policy voidable only if the misrepresentation be as to a material fact. It may be claimed that, even if the rider be void, its effect should be to invalidate the entire policy. Such an interpretation would do violence to the purpose of the law and frustrate its beneficent intent as interpreted in the Quinlan Case, supra. If an insurance company, even though without original fraudulent intent, may issue a policy in the standard form, and by adding unauthorized riders entrap the insured into technical violation of an illegal warranty, and thus escape civil liability at the cost of an innocent victim who has regarded himself safe against, and paid for adequate protection from, loss by fire, this legislation would be worse than useless. It seems to me to be more reasonable to interpret the intention of the Legislature to have been to hold the insurer to his policy as if it were one properly issued in the standard form, and to disregard such unauthorized additions thereto or changes therein as the insurer may have seen fit to impose. See, also, Wheeler v. Mutual C. Ass'n, 102 Ill. App. 48, 58; Equitable Life Soc. v. Clements, 140 U. S. 226, 233, 11 Sup. Ct. 822, 35 L. Ed. 497.

It is to be noted that the present controversy arises between the insured and his broker, and that no insurance company, nor the interests of insurance companies as a whole, are represented. It may be that there are considerations that may be urged on their behalf contrary to or modifying the views hereinabove expressed, but there are none which I have been able to find on independent research. It has been held in Western Mass. Fire Ins. Co. v. Hilton, 42 App. Div. 52, 58 N. Y. Supp. 996, that a policy issued by a Massachusetts company in Massachusetts, the premium also being paid there, although covering New York property, is a contract made in Massachusetts, and, therefore, to be governed as to its validity by the laws of Massachusetts.

The record in the case at bar, however, shows that the policy here was issued by the general agents of the Iowa company in New York City, and that its validity was dependent by its very terms on such issue by such agents, and the premium was paid to such agents in this city. The property was also in New York. Under these circumstances, it must be regarded as a New York contract, and its validity judged by the laws of this state. Union Nat. Bank v. Chapman, 169 N. Y. 538, 543, 62 N. E. 672, 57 L. R. A. 513, 88 Am. St. Rep. 614.

Inasmuch as it follows from these considerations that the policy of the Iowa company is a valid policy of insurance to the amount named, it follows that the complaint was properly dismissed. In view of this conclusion, it is unnecessary to consider the contention of respondents to the effect that they were not the agents employed by plaintiffs, but that the latter employed an intermediary, who in turn employed the defendant. I do not, however, regard 'that position as warranted by the testimony.

The judgment should be affirmed, with costs.